JASPER C. DEWEESE, EXECUTOR, V. CATHERINE MUFF.

FILED DECEMBER 8, 1898. No. 8442.

Negotiable Note: INDORSEMENT IN BLANK: PAYMENT TO AGENT. Where a negotiable note, indorsed by the payee in blank, is delivered to an agent for collection, the payment thereof by the maker in good faith to the agent while the note is in the possession of the latter, after the death of the principal and without notice of his death, will discharge the debt.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Affirmed.*

The opinion contains a statement of the case.

*Thomas Ryan* and *James W. Dawes*, for plaintiff in error:

The death of the principal terminated the agency, and subsequent payment to the agent did not discharge the debt or release the maker of the note. (*Ish v. Crane,* 8 O. St. 521, 13 O St. 575; *Davis v. Windsor Savings Bank,* 46 Vt. 728; *Galt v. Galloway,* 4 Pet. [U. S.] 344; *Long v. Thayer,* 150 U. S. 520; *Travers v. Crane,* 15 Cal. 12; *Wilson*

v. *Edmonds,* 4 Foster [N. H.] 572; *Rigs v. Gage,* 2 Hump.
[Tenn.] 350; *Cleveland v. Williams,* 29 Tex. 204; *Hunt v.
Rousmanier,* 8 Wheat. [U. S.] 173; *Blades v. Free,* 9 Barn.
& Cr. [Eng.] 167; *Smout v. Ilbery,* 10 Mees. & Wels.
[Eng.] 1.)

*F. I. Foss* and *W. R. Matson, contra:*

The agent of payee and the maker of the note having
acted in ignorance of payee's death, their acts were bind-
ing. (*Ish v. Crane,* 8 O. St. 521, 13 O. St. 575.)

Payment to the agent was binding. (18 Am. & Eng.
Ency. Law 190; *Stoddard v. Burton,* 41 Ia. 582; *Edwards
v. Parks,* 60 N. Car. 598; *Loomis v. Downs,* 26 Ill. App. 257;
*Davis v. Lusitanian Portuguese Benevolent Ass'n,* 20 La.
Ann. 24.)

Payment made in any manner requested or agreed
to by the creditor will discharge the debtor, though the
money never reached the creditor's hands. (18 Am. &
Eng. Ency. Law 195; *Gurney v. Howe,* 9 Gray [Mass.]
404.)

The delivery of a note to the agent of the holder for
collection will authorize such agent to receive the money
when due and to deliver the note to the maker on pay-
ment. (18 Am. & Eng. Ency. Law 192; *Yazel v. Palmer,*
81 Ill. 82; *Padfield v. Green,* 85 Ill. 529; *Johnson v. Glover,*
121 Ill. 283; *Camp v. Wiggins,* 72 Ia. 643; *Thomassen v.
Van Wyngaarden,* 65 Ia. 687.)

Maker's possession of note is *prima facie* evidence of
payment. (18 Am. & Eng. Ency. Law 206; 1 Greenleaf,
Evidence [13th ed.] secs. 38, 527; *Peavy v. Hovey,* 16 Neb.
416; *Smith v. Gardner,* 36 Neb. 741.)

The principal's death did not terminate the agency.
(1 Am. & Eng. Ency. Law [2d ed.] 1223, 1224; *Bank of
New York v. Vanderhorst,* 32 N. Y. 553; *Merry v. Lynch,*
68 Me. 94; *Hess v. Rau,* 95 N. Y. 359; *Garrett v. Trabue,*
82 Ala. 227.)

An indorsement in blank makes the instrument trans-
ferable by delivery and payable to bearer. (Tiedeman,

Commercial Paper [ed. 1889] sec. 266; *Palmer v. Nassau Bank*, 78 Ill. 380; *Morris v. Preston*, 93 Ill. 215; *Curtis v. Sprague*, 51 Cal. 239; *Krueger v. Klinger*, 30 S. W. Rep. [Tex.] 1087.)

NORVAL, J.

On July 1, 1892, Catherine Muff executed a note whereby she promised to pay to the order of James E. Jones the sum of $2,000 on September 1 of the same year, with interest thereon at seven per cent per annum. The payee resided in England, but the note was delivered to him personally at Crete, Nebraska; at which time he stated, in substance, to Mrs. Muff, in the presence of one J. H. Gruben, her business manager, that he would probably sell the note to C. C. Burr of Lincoln, as he, Jones, was going to England and desired to take the money with him, and that the maker should pay the note to Mr. Burr. The latter had been and then was the agent of Mr. Jones. Instead of selling the note, the payee, soon after it was given, indorsed the same in blank and delivered the instrument to Mr. Burr for collection. On September 19, 1892, Mrs. Muff paid $1,000 on the note to Mr. Burr, and on November 11, 1892, she paid him the balance due, and the instrument was at the time delivered to her indorsed "Paid Nov. 11th, '92. C. C. Burr." On October 16, 1892, James E. Jones died, leaving a will, and Jacob Bigler was duly appointed executor of his estate, and qualified as such. The executor repudiates the payment made to Mr. Burr on November 11, claiming that the latter's authority to collect the note had been previously revoked by the death of Mr. Jones, and this action was brought to recover from Mrs. Muff the amount of said payment as the balance alleged to be due on the note. The jury returned a verdict for the defendant, under a peremptory instruction of the court so to do, and error has been prosecuted from the judgment entered thereon. After the filing of the record in this court Jacob Bigler died, and the action was revived in the name of Jasper C. De-

weese, as executor *de bonis non* of the estate of James E. Jones, deceased.

It is disclosed that Mrs. Muff paid the amount due on the note to Burr in good faith, without any notice or knowledge whatsoever that he was not the owner of the paper, or that Mr. Jones, the payee, was dead. It is insisted that the court erred in directing a verdict for the defendant, because the death of Jones revoked the authority or power of Mr. Burr to receive from the maker payment of the obligation, although she was unaware of the death of the payee. Undoubtedly the rule is that the death of a principal instantly terminates the agency; but it by no means follows that all dealings with the agent thereafter are absolutely void. [Where in good faith one deals with an agent within his apparent authority, in ignorance of the death of the principal, the heirs and representatives of the latter may be bound, in case the act to be done is not required to be performed in the name of the principal.] There is a sharp conflict in the authorities on the question, but it is believed that the better reasoned cases sustain the proposition stated, among which are the following: *Ish v. Crane*, 8 O. St. 520, 13 O. St. 574; *Cassidy v. M'Kenzie*, 4 Watts & Serg. [Pa.] 282; *Davis v. Lane*, 10 N. H. 156; *Dick v. Page*, 17 Mo. 234; *Moore v. Hall*, 48 Mich. 143; 1 Am. & Eng. Ency. Law [2d ed.] 1224.

We quote the following apposite language from the opinion in *Ish v. Crane*, 8 O. St. 520: "Now upon what principle does the obligation, imposed by the acts of the agent after his authority has terminated, really rest? It seems to me the true answer is, public policy. The great and practical purposes and interests of trade and commerce, and the imperious necessity of confidence in the social and commercial relations of men, require that an agency, when constituted, should continue to be duly accredited. To secure this confidence, and consequent facility and aid to the purposes and interests of commerce, it is admitted that an agency, in cases of actual

revocation, is still to be regarded as continuing, in such cases as the present, toward third persons, until actual or implied notice of the revocation. And I admit that I can perceive no reason why the rule should be held differently in cases of revocation by mere operation of law. It seems to me that in all such cases the party who has, by his own conduct, purposely invited confidence and credit to be reposed in another as his agent, and has thereby induced another to deal with him in good faith, as such agent, neither such party nor his representatives ought to be permitted, in law, to gainsay the commission of credit and confidence so given to him by the principal. And I think the authorities go to that extent. (See *Pickard v. Sears*, 6 Ad. & Ell. [Eng.] 69.) The extensive relations of commerce are often remote as well as intimate. The application of this doctrine must include factors, foreign as well as domestic, commission merchants, consignees and supercargoes, and other agents remote from their principal; and who are required for long periods of time not unfrequently, by their principal, to transact business of immense importance, without a possibility of knowing perhaps even the probable continuance of the life of the principal. It must not unfrequently happen that valuable cargoes are sold and purchased in foreign countries by the agent, in obedience to his instructions from his principal, after and without knowledge of his death. And so, too, cases are constantly occurring of money being collected and paid by agents, under instructions of the principal, after and without knowledge of his death. In all these cases there is certainly every reason for holding valid and binding the acts so done by the agency which the principal had, in his life, constituted and ordered, that there would be to hold valid the acts of one who had ceased to be his agent, by revocation of his power, but without notice to the one trusting him as agent."

In the case at bar it was not necesary for the agent, Mr. Burr, to collect or receive the money in the name of

Mr. Jones, nor did he do so. The defendant was justified in paying the money under the circumstances disclosed by the evidence. The note was properly indorsed by the payee in blank, and it was at the time in possession of Mr. Burr. Payment to him without knowledge that the note was held for collection, or that the owner was dead, discharged the debt. (*Davis v. Lusitanian Portuguese Benevolent Ass'n*, 20 La. Ann. 24; 18 Am. & Eng. Ency. Law 190; *Edwards v. Parks*, 60 N. Car. 598; *Loomis v. Downs*, 26 Ill. App. 257; *Stoddard v. Burton*, 41 Ia. 582; *Boyd v. Corbitt*, 37 Mich. 52; *Johnson v. Hollensworth*, 48 Mich. 143.) In the case last cited a negotiable note was indorsed by the payee and delivered to an agent for collection. Subsequently the payee died. It was held that the authority to collect was not thereby revoked. A verdict for the defendant was properly directed in the case at bar. The conclusion reached obviates an examination of the instructions tendered by the plaintiff and refused by the court. The judgment is

AFFIRMED.

RYAN, C., not sitting