EDA MEINHARDT, APPELLANT, v. LEWIS A. NEWMAN ET AL., APPELLEES.

FILED APRIL 7, 1904. No. 13,536.

1. **Agency:** DEATH OF PRINCIPAL. It is not a hard and fast rule, that an agency shall be deemed to have been revoked for all purposes by the death of the principal, as against those dealing in good faith with such agent, without knowledge of revocation, and within the scope of his actual and ostensible authority.

2. **Evidence.** Evidence examined, and *held* sufficient to sustain the judgment of the trial court.

Appeal from the district court for Thayer county: George W. Stubbs, Judge. *Affirmed.*

*C. L. Richards,* for appellant.

*Kelligar & Ferneau* and *T. C. Marshall, contra.*

Oldham, C.

This is an action for the foreclosure of a real estate mortgage on certain lands situated in Thayer county, Nebraska. Defendants answered admitting the execution of the mortgage, and pleading payment to the duly authorized agent of the payee. There was a judgment for the defendants in the court below, and plaintiff appeals.

The facts clearly established by the testimony contained in the bill of exceptions are: In 1881, J. W. Lewis, of Suffolk, Massachusetts, the payee named in the note in controversy, constituted M. H. Weiss of Hebron, Nebraska, his agent for the purpose of loaning, collecting and reinvesting money on farm securities in Thayer county, Nebraska. Mr. Weiss continued to act as his agent up to and during the year 1885, when the Blue Valley Bank at Hebron, Nebraska, was organized and Mr. Weiss became its cashier. On the organization of the bank, Mr. Weiss transferred the account of J. W. Lewis to the bank, and credited the bank with profits on the loans and collections made for Mr. Lewis, and an account was opened at the bank with him, more, however, for the convenience of the bank in transacting the business than for the benefit of Mr. Lewis. A large number of loans were negotiated by the bank, and these notes were all made payable to J. W. Lewis, at the Blue Valley Bank. Among others, the loan in controversy was made by the bank to one William T. Jackson for $700, secured by real estate mortgage. The mortgage provided, among other things, that payments in multiples of $100 might be made on the principal debt, at any interest payment. Jackson conveyed the lands

covered by the mortgage to the defendant Lewis A. New-
man, in the year 1891, who assumed and agreed to pay
the mortgage. J. W. Lewis, the payee of the note, died, in
1891, intestate, and Sherman T. Lewis was duly appointed
as one of the administrators of his estate. In 1892, de-
fendant Newman paid the interest on the loan, and $100
on the principal, through his agent, to the Blue Valley
Bank; received a receipt from the bank for such payment,
and this money was properly transmitted to the admin-
istrators of the payee of the note; and the interest coupon
and receipt for part payment of the principal were trans-
mitted to the bank and, by the bank, to the defendant
Newman. On August 16, 1893, defendant paid in the
same manner to the bank, $48, interest, and $225 of the
principal of the loan, and took its receipt therefor. The
bank transmitted the interest of $48, but credited the pay-
ment of $225 on the principal of the indebtedness to the
account of J. W. Lewis at the bank, and did not transmit
this to the legal representatives of the payee. In 1894, an-
other payment was made in the same manner, which was
duly transmitted, accepted and receipted for. In Septem-
ber, 1895, the Blue Valley Bank suspended, and a receiver
was appointed to take charge of its affairs; and in the
same year, the administrator of the estate of J. W. Lewis,
deceased, assigned the mortgage and note to plaintiff, Eda
Meinhardt, in the following manner: "For value received,
I, Sherman T. Lewis, administrator of the estate of J. W.
Lewis, deceased, hereby assign and fully transfer to Eda
Meinhardt, heirs and assigns forever, one certain mort-
gage executed by William T. Jackson and Annie M. Jack-
son, his wife, to J.W. Lewis, bearing date August 18, 1890,
and recorded, etc., * * * also the promissory note accom-
panying said mortgage and mentioned therein, and for
the security of which said mortgage was given." This
transfer was duly acknowledged before a notary public.
In 1896, a similar assignment of the mortgage and note
was executed by each of the heirs of J. W. Lewis, deceased,
and these assignments were recorded in the office of the

register of deeds in Thayer county, in 1896. The assignment of the heirs was taken after the maturity of the note, and was recorded nearly 3 years after the payment in dispute had been made.

The only question at issue on the trial of the case in the court below was as to the credit of the $225 payment on the principal sum of the indebtedness made as above stated. All the remainder of the indebtedness, if this credit is allowed, has been duly paid. There is no contention that plaintiff is an innocent purchaser of this note by indorsement under the law merchant; and plaintiff virtually concedes that the evidence is sufficient to establish an agency in the Blue Valley Bank for the collection of the interest and principal by its dealings with J. W. Lewis, deceased, but it is strongly contended that this agency was terminated by the death of J. W. Lewis, and that thereafter defendant dealt with the bank at his peril.

It is not, however, as contended by plaintiff, a hard and fast rule that, under all circumstances and in the face of intervening equities, the death of a principal absolutely nullifies and renders of no effect the acts of an agent, dealt with in good faith and in view of his apparent authority, by one who does so, without notice of the revocation of his authority. This view is well illustrated by the holding of this court in *Deweese v. Muff*, 57 Neb. 17, in which NORVAL, J., after a careful review of the authorities, quotes with approval the following language from the opinion in *Ish v. Crane*, 8 Ohio St. 520, 540:

"Now upon what principle does the obligation, imposed by the acts of the agent after his authority has terminated, really rest? It seems to me the true answer is, public policy. The great and practical purposes and interests of trade and commerce, and the imperious necessity of confidence in the social and commercial relations of men, require that an agency, when constituted, should continue to be duly accredited. To secure this confidence, and consequent facility and aid to the purposes and interests of commerce, it is admitted that an agency, in cases of actual

revocation, is still to be regarded as continuing, in such cases as the present, toward third persons, until actual or implied notice of the revocation. And I admit, that I can perceive no reason why the rule should be held differently in cases of revocation by mere operation of law."

Now, it will be remembered that each of the payments made by the defendant on this mortgage indebtedness had been made after the death of the payee, and all, except the $225 in dispute, had been transmitted by the bank to the representatives of the deceased and had been properly accounted for. It is also in evidence and undisputed, that a large number of other collections, some of interest and some of principal, had been made by the bank for one of the administrators after his appointment and qualification as such. That after his qualification, he sent to the bank for a statement of its dealings with the intestate, and for a list of mortgages negotiated by it, and that such was duly furnished by the bank. That when the bank failed and passed into the hands of a receiver, the $225 paid by defendant was found credited to the J. W. Lewis account kept at the bank.

Now we think it could not be disputed that had J. W. Lewis, in his lifetime, revoked the agency of M. H. Weiss, and the Blue Valley Bank, to collect his loans and reinvest his money, and had he failed to notify those doing business with that institution under its real and apparent authority as agent, he would not in conscience have been heard to say, as against those honestly dealing with the institution, that its agency had been revoked. And if, as set forth in *Dewecse v. Muff, supra,* the same rule should apply on revocation by death, then we think that the conduct of the administrator in his dealings with the bank with reference to loans and collections made for his intestate, should now estop the representatives and heirs of the deceased from asserting the revocation of this agency by the death of the principal. That the note and mortgage were a part of the same transaction is alleged in the petition and admitted in the arguments; that the privilege of

paying $100, or any multiple thereof, on the principal debt at any interest payment, was brought home to the plaintiff by the possession of the mortgage, is not disputed, as was also notice of the fact that part of the principal had been paid under this option before she took the assignment.

There is another question urged by appellees that would probably be fatal to a reversal of this case, and that is, that there was no evidence of any kind in the record tending to show that no action at law had been had on the note before foreclosure proceedings were instituted. This allegation was contained in the petition and denied by the answer. But as we deem the evidence sufficient to sustain the judgment of the trial court on the merits of the controversy, we refrain from saying just what judgment we should have rendered in this trial *de novo* for want of this technical proof, had no other substantial defense been interposed.

We conclude, however, that the evidence is sufficient to sustain the judgment of the trial court on the merits of the controversy, and we recommend that it be affirmed.

AMES and HASTINGS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.